I disagree with the majority's conclusion that Roger and Rhonda Smith "contractually relinquished" custody of their daughter, Linda, to Marietta Sue McGlothin, thus forfeiting their natural and paramount right to Linda's custody. See Perales, 52 Ohio St.2d at 97-98. Moreover, "financial irresponsibility" in itself is not a sufficient basis for denying parents the right to their children. Therefore, I must dissent.
Parents have a "paramount" right to the custody of their minor children unless a preponderance of the evidence indicates that they are "unsuitable," a term which includes "contractual relinquishment of custody." Id. Even assuming, if only for the sake of argument, that the March 10, 1995 agreement represents an enforceable contract, I find no evidence of any intention on the part of the Smiths to "relinquish" their right to the custody of Linda by contract or otherwise. "To relinquish" is defined as "[t]o abandon" or "to renounce some right or thing." Black's Law Dictionary (5 Ed. 1979) 1161. Here, in contrast, the agreement between the Smiths and McGlothin exists solely to effect the eventual, successful reunification of parents and child. The arrangement was made to allow Linda to live with McGlothin temporarily so that Rhonda could "make improvements in her life" to "benefit * * * her, her husband, and the child."[2] During the separation, the Smiths, far from "abandoning" Linda, retained the right to telephone and visitation privileges that were limited only by the distance between Ohio and Georgia and their financial means. Indeed, even the trial court deemed the arrangement a "non-judicial reunification plan." (Emphasis supplied.) Finally, the Smiths' motion to have custody of Linda returned to them only two months after the agreement was filed is yet another indication that the Smiths did not intend to "relinquish" their right to custody of their daughter.
Because this grant of custody to McGlothin was temporary, the trial court erred by applying the statutory factors set forth in3109.04(E)(1)(a), i.e., the change of circumstances test.[3]
In stead, the trial court should have followed the holding in In re: Carpenter (1987), 41 Ohio App.3d 182, which addressed the situation where "a parent is seeking to extinguish an award of temporary custody to a non-parent in order to re-establish custody of the child." Carpenter states:
 The parent, being the natural custodian of the child, starts with the benefit of the preferential considerations mandated by In re Perales, as a natural right. * * * An agreement to surrender temporary custody is not a knowing and intelligent surrender of the parent's natural right to preferential treatment in a subsequent determination of custody." (Emphasis in original.)
In this case, the trial court should have deferred to the Smiths' "natural right to preferential treatment." See Perales at 89; Carpenter at 185.
Finally, the majority's opinion runs counter to the basic premise that people do not need to be financially responsible to be good parents. If we carry the majority's decision to its logical conclusion, then we must accept that the only way this mother can regain custody of her four-year-old daughter is to fulfill each and every one of the conditions in the agreed entry. The agreement states that Rhonda Smith will complete "her high school and posthigh school education towards a self-sustaining career," and obtain a "self-sustaining occupation" as conditions for having Linda returned to her. The agreement does not specify, however, how much "post-high school education" is enough for Rhonda to regain custody of Linda. It is, potentially, a moving target. Must Rhonda Smith earn an associate's degree? A bachelor's degree? Or will only a graduate degree suffice? Nor does the agreement state what type of employment constitutes a "self-sustaining career" or "occupation." Must she work full-time or part-time?
If the point of the temporary custody arrangement was to permit the Smiths to obtain some financial stability, their achievement of this goal appears to have gotten lost on the majority in favor of holding Rhonda Smith accountable for the discrete, elusive objectives mentioned in the agreed entry. There is good reason to believe that each requirement will indeed have to be met since the majority has just determined that the mother's obtaining her high school GED was, in itself, insufficient to merit the return of her daughter. In addition, this court has now approved the "Magistrate's Financial Responsibility Test" as a benchmark for determining whether Rhonda Smith can adequately care for her daughter.
The opinion of the majority ignores the fact that obtaining a post-secondary degree and pursuing a career do not necessarily result in financial responsibility. There are many high school graduates who, though they are capable of success in college, choose not to go there and are still financially successful. There are many educated, employed parents who might be considered "financially irresponsible." There are also many mothers who are college graduates who choose not to obtain gainful employment because they want to devote their time to rearing their children.
In short, there is no requirement in nature or in law that parents must be fiscally stable before they can be good parents. For the reasons stated above, I must dissent.
[2] The agreed entry makes, however, no mention of any obligation on the part of Roger Smith.
[3] The magistrate's decision and order states:
* * *
 Conclusions of law: Parents contractually relinquished custody of child. There was no evidence of change of circumstances of the child or the residential parent or either parent that would warrant a modification of the 3-10-95 entry and that no modification is in the best interest of the child.